The final case scheduled for argument this morning is Perez v. City of New York. Yes, may it please the Court, Stephen Bergstein for the Plaintiff Appellant Gil Perez. The issue is whether the District Court held, properly held, that plaintiff cannot make out a crime prevention case of retaliation for seeking a reasonable accommodation. The District Court held that plaintiff was fired not because of the reasonable accommodation but because management had been writing him up for poor job performance even before a plaintiff had made the reasonable accommodation request. That analysis for purposes of rejecting the plaintiff's minimal primifacial burden is incorrect. Plaintiff's termination had nothing to do with the performance memos. This Court did hold in Slattery v. Swiss Reinsurance that if the wheels are in motion to fire the plaintiff for a particular reason and then the plaintiff engages in protected activity, and then the plaintiff is fired for the reasons that were in place all along, that it kills the causation element of the crime prevention case. That's not the case here. The defendant abandoned its disciplinary charges against the plaintiff prior to his termination and focused on something else. The discipline never went to a hearing, so the District Court respectfully misread and misapplied Slattery. Mr. Bergstein, didn't the fraud charges with regard to your client's application for work at the city in the sanitation department, didn't those come to light as a result of the disciplinary proceedings that were ongoing? People started looking further and found the probation report that he had received in 2009. In fact, he was ordered to show up for a hearing at the disciplinary department before he made his request for reasonable accommodation for his sleep apnea. Isn't that right?  What about the chronology, though? That's a chronology, that's a description. It's in the timeline, but there's a couple of ways to draw the inferences from that. The plaintiff had put in a reasonable accommodation request that had been ignored for months, and he keeps writing letters telling them to get moving. And at some point, a few days after his most angry letter, professional but angry, then they decide to look into his past employment with the city to see what's going on. That's in the timeline, a November 23rd, 2015 email from Knoll referencing a phone call from the previous Friday. So at some point... Hadn't he been directed to appear as of October 7th at the Office of Disciplinary Proceedings? There was a lot that was going on in the city in response to all the complaints that have been charged against him since, I don't know, 2013, 2014, and mostly 2015 then. Throughout April, May, June, September, and so on. The fraud never would have come to light if those disciplinary proceedings hadn't been underway. But you still can't say that you have a slattery problem in the causation timeline in the prima facie case if the performance memos that the district court relied upon in denying the prima facie case were not a part of his termination. I think the district court's analysis stretches slattery beyond anything this court had intended. At some point, they abandoned the job performance concerns that comprise all the disciplinary memos, and they focused on something else. So when you consider the minimal nature of the prima facie case, the causation chain is not broken at that point. He wasn't fired for job performance. The jury can draw an inference, I suppose, as the city is going to argue that, well, the fraud allegations grew out of the job performance issue, but the fraud allegations have nothing to do with job performance. And so the district court incorrectly grants summary judgments on the first element, on the first phase of his case, the prima facie case. And what would you point to, then, as the jury could rest on finding causation from his filing a request for reasonable accommodation? Because he makes the request in, I believe, October, and he keeps sending letters telling them, can you make a decision on my accommodation request? It took them five or six months, which is a long time for reasonable accommodation, and they're doing nothing. His letters are getting more and more pointed. The accommodation he requested, though, was not to be transferred without six months' notice, right? It's not as though he needed a special chair that they could provide him in 24 hours. No, but four to six months is a long time for reasonable accommodation. And the point is, he's sending these letters that made it all the way to the commissioner. What are you doing? Get moving on this. This is bad faith. He became a pain in the butt, but sometimes you have to do that when you need a reasonable accommodation from a large bureaucracy. And at some point, they open up a fraud investigation, even though a couple of years earlier, the same investigation had cleared him for employment. So that's the connection between his protected activity and the termination. The district court, I think the city, argues that it's a six-month gap between the protected activity and his termination. Number one, this court has held that eight months is enough to draw the inference. Number two, the six months is sort of an artificial timeline because plaintiff is not responsible for the six months. He's waiting six months for them to make a decision. And, you know, as soon as he starts getting tough in his letters, asking them to make a decision, then they open up the fraud investigation. So the crime official case has been made out here. Turning to the issue of the fraud investigation, there were two investigations, one in 2013, one in 2015. In 2013, they cleared Mr. Perez for employment. They said there was no fraud. In 2015, with largely the same evidence, the same investigator following the reasonable accommodation request, they find that he did engage in fraud and that he's not qualified to work for DCAS. And, you know, the jury can find on the basis of these facts that there's evidence of pretext. If they change their mind on the same issue with largely the same evidence after he engages in the protected activity. So for these reasons, this case really needs to be heard by a jury. There's a lot of issues of fact here about motive and intent. Why did they reopen the investigation? Why did they find he engaged in fraud after they initially cleared him of no fraud? This is classic issues of fact that are common to many retaliation claims. Thank you. All right. You have three minutes of rebuttal. We'll hear from Mr. Henry. You're on mute. You're on mute. Apologize, judges, may it please the court on behalf of the respondents. No reasonable jury on this record can conclude that the city fired Mr. Perez because he sought a reasonable accommodation request for sleep apnea. As your honor mentioned. He had a long standing history of performance deficiencies. It started a year before his his reasonable accommodation request. The investigation into his performance deficiencies began four months before he saw that reasonable accommodation request. The sort of organic outgrowth of that investigation was a discovery that he had lied in his application process. He was then terminated as a result under this court decision and slattery. The reason for terminating him was both part and the ultimate product of that period of progressive discipline that began long before he ever engaged in his protected activity. Now, Appellant has argued that his reasonable accommodation request was ignored for months. And that's simply belied by the record. He submitted a letter request for an accommodation on October 15th of 2020. It was responded to within a week by the diversity and equal employment opportunity officer handling it. He then supplemented that request on November 8th of 2015 with the with the completed reasonable accommodation request form. And four days later, on November 12th, that same diversity and EEO officer responded to him, told him she was going to be handling it, that she needed some more information, that she needed, that she was going to commence the interactive process with him. And that if he had any questions, please contact her. She sent that letter that email to him on the morning of November 12th. He then sent a letter later that same day to the commissioner complaining that his request wasn't being considered and that it was a constructive denial. So this notion that his request was wasn't being handled is a fabrication. The record clearly shows that over several months, the Department of Citywide Administrative Services, the employees there that were handling his reasonable accommodation requests were communicating with him. There was no evidence of hostility. And moreover, he was asking for overtime during this entire process. And the person in charge of his request was trying to get him to reconcile his overtime request with his request for a reasonable accommodation, not to have a shift change. And so there was no there's no evidence in the record support that they unreasonably delayed handling his request because they had any hostility toward him or because they were motivated by any sort of retaliatory. I thought what opposing counsel's argument was, was that during the six month period, he was waiting for a decision. I don't think he said that he was waiting for a response. I don't think he was arguing that he had been met with a wall of silence. I thought his only argument on this point was that the reasonable accommodation had not yet been granted. So all this back and forth, I don't think is responsive to that point. Well, your honor, what I would say is that, number one, he needed to support his requests with medical documentation. And that took a little bit of time. He's he had first submitted a letter from a physician's assistant and they asked him for more substantial documentation. Because back up, because I think we're talking about two different things. One is, I think the argument you would be making here is that it was perfectly reasonable. Much time to respond. But I think what we're really backing up to, as I understand opposing counsel's point, is that the six month period is a short enough period of time that one can make a reasonable inference that it was close that the ultimate termination was close enough in time to the moment when he made his reasonable accommodation request to draw the inference of a causal connection. And I think that I don't know how helpful it is to then get into a debate, a factual debate about how reasonable the discussions were during that six month period. We're just talking about the temporal proximity, right? Sure, Your Honor. But even assuming that six months or six and a half months is not a long enough period of time, because the reason for terminating him was the product, was the ultimate product of an investigation that started long before his request. Under this court's decision in Slattery, there can be no causal connection as a matter of law between his engagement in protected activity and the adverse employment action. There was a single investigation in this case. He was ultimately terminated, though, for the fraud. Yes, Your Honor. And the investigation that began was about incompetence and poor performance. They really involved different facts, didn't they? Yes, Judge. But what we have here is a disciplinary unit at the Department of Citywide Administrative Services is investigating his performance deficiencies. During the course of that, they stumble upon information suggesting that he's lied in his application process. They then forward that information to the investigations unit, which then reconducts an investigation into his application and finds that he's lied about the circumstances surrounding his departure from the Department of Sanitation and the New York City Housing Authority. So we're not talking about two different investigations in this issue. I mean, that's what that that's what appellant wants to do. He wants to bifurcate this into two different investigations, one before his accommodation request and one after his accommodation request. And he wants to claim that all the information revealed after his accommodation request is somehow tainted. But we have a single investigation and the information that the information about his fraud in the application process was it was an organic outgrowth of the of the investigation into his performance deficiencies. So can I just ask, and it'll be interesting to hear counsel respond, because I just want to see if I'm framing your argument correctly. You're arguing that slattery applies. And would your argument be that even though the discovery of the fraud upon which he was terminated was a different fact from the complaints that generated the disciplinary investigation of engaging in whatever performance misconduct, because it all flowed out of the same disciplinary process. The fact that the ultimate basis of termination happened to be a fact that was unearthed during the disciplinary process doesn't take this out of slattery any more than, you know, I'll make this up. If he had initially been brought up on disciplinary charges for breaking thermostats and in the course of the disciplinary hearing, it was discovered that he was also breaking boilers and it was that that got him fired. It doesn't matter because it's all part of a uniform or continuous disciplinary process. Am I encapsulating it? Absolutely, Judge. During the course of an investigation, when an employer investigates an employee for disciplinary matters, they could uncover that the employee's license or certification has been expired. They could uncover that an employee has failed to disclose an arrest or conviction during the course of their employment. Slattery is not about the particular action that the employer then takes. It's about the timing of the action with respect to protected activity. And in this case, we had a single investigation here. There weren't two different investigations. Plain language of slattery is that retaliation claim cannot arise if the adverse employment action is both part and the ultimate product of a period of progressive discipline that predated the protected activity. And that's exactly what we have here. So let me ask you a hypothetical. It's not these facts. Let's assume that there had been this pre-existing disciplinary proceeding underway. Mr. Perez files his reasonable accommodation request on, let's say, September 1st. And then on September 2nd, he's terminated. Is it your view that slattery would require dismissal as a matter of law? You know, I think that those I mean, obviously, it's a different set of facts. I'm not. That's why I asked. Yeah. I mean, I. I think that temporal proximity could potentially and maybe that that changes the analysis of slattery a little bit. However, if there was a if there was a well-documented history of an investigation and performance deficiencies, you know, I think slattery may very well still be applicable in a case just like that. You know, plaintiffs and no employee for that matter should be able to shield themselves from justifiable discipline or justifiable termination by simply engaging in a protected activity in the midst of investigation. And, you know, plenty of in this case was a savvy employee and any savvy employee who gets a whiff. He was a lawyer who gets a whiff of of a disciplinary investigation could simply engage in protected activity. And all the information after that time then gets automatically tainted. That doesn't seem to me to me to be the right outcome. I also want to just one more point, which is his claim that the investigation in 2013 and investigation in 2015 were identical and that they that there was no other reason that there was no reason to terminate him. But for the speculation about retaliation. And that is simply not the case. In his first during the first background investigation, they were completely unaware that he had been terminated from the New York City Housing Authority. Because of misconduct charges that were substantiated after hearing, they did not find that out until the second investigation. At the New York City Housing Authority, he again had a period he had a pattern of misconduct. He was charged. He had a hearing. The claims substantiated. He was in terminated. He sued. And during a settlement agreement, he was permitted to retroactively resign in lieu of termination. And those facts were unknown to the investigations unit at DCAS during their first investigation. It was an entirely new incident. And so this is not an this is not a case in which you have two investigations with the exact same information and they just happen to come to an arbitrary different decision. A second time. If there are no further questions. Thank you very much. Thank you. I think we have the argument. Mr. Bergstein, you have three minutes rebuttal. Yes. What we just heard about what this court intended and slattery cannot be what this court intended and slattery. The language was that the adverse action and the ultimate were both part and the ultimate product of an extensive period of progressive discipline. Then there's no prima facie case. What this court was saying was there has to be a connection, you know, a factual similarity between what preceded the protected activity and what postdated the protected activity. Mr. Bergstein, would you please address the hypothetical that I addressed to your your adversary? Is your view that the basis for termination must be an actual particular charge that was lodged prior to the reasonable accommodation request, or can it be sort of similar and of a kind? And again, the example I used was if discipline is initially brought because he's breaking thermostats and in the course of the disciplinary hearing, it comes out that he has also been breaking whole boilers. In your view, would slattery apply there or is your view that strictly it has to be the particular charge that existed or that had been aired previous to the reasonable accommodation request? Slattery would probably apply on that hypothetical because the boiler thermostat nexus is pretty tight and they're related to each other because you're accusing the guy of destroying equipment. But that is not what we have here. And why but why is it different in the course of investigating, say, broken thermostats? You find out I'll take something different. He's been sexually harassing all of his co-workers. So in your view, slattery would not apply there. That would be like the present case where they had discovered completely unrelated misconduct. Slattery is about progressive discipline and what happens in the course of that progressive discipline when the train has already been set in motion and it's heading in that direction no matter what you did in terms of protected activity. But this this is very far afield from the. So just to take my sexual harassment example, would your view be slattery would not apply there? There may be other reasons why the fellow doesn't win or does win, but slattery would not apply in that hypothetical. My guess my answer would be slattery wouldn't apply. It just seems distinct from an allegation that you're destroying equipment. The issue about fraud. Let me emphasize one thing. The record on the fraud is there's a lot of fact issues here. It was it was not a single investigation. There was separate investigations. The first one was closed. He starts working. They reopened in 2015. They claimed that they learned in 2015 that he was that he didn't that he didn't know that there was a negative report about his job performance at sanitation. But in 2013, they did know this because there's evidence to that effect. He signed the probation report that made reference to his alleged poor performance. And there's a memo where management told other members of management. We discussed the probation report with Perez. Those documents were relevant, were present in 2013. So they didn't really learn anything new in 2015. So we're talking about pretext here. Why did they fire him for on the same allegation that they cleared him of a couple of years earlier? The the the the the event, the relevant events in terms of motive is protected activity. And whether they claim they engaged in a good faith or reasonable accommodation and whether his request was was not reasonable for purposes of a crime. Fascia case, all you have to show is timing to make out the causation and six months is enough. And if you want to say that, you know, we didn't mean him any harm and we did our job, we did everything right. That's the trial. That's not for deciding this case as a matter of law on the papers. All right. Thank you very much. We have the arguments. Thank you both. We will take the matter under advisement.